***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications; therefore, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Defendant regularly employed three or more employees, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act on all relevant dates herein.
2. All parties are properly before the Industrial Commission, which has jurisdiction over the parties and the subject matter of this claim.
3. An employer-employee relationship existed between plaintiff-employee and defendant-employer from 13 November 1974 to 25 August 1975, from 5 January 1976 to 2 May 1980, and from 2 June 1982 to 6 August 1992.
4. Plaintiff's average weekly wage on the relevant dates herein was $386.12.
5. At and subsequent to the deputy commissioner hearing, the parties submitted the following:
 a. Plaintiff's Medical Records, which were admitted into the record and marked collectively as Stipulated Exhibit (2);
 b. Public Records-AHERA Management Plan, which were admitted into the record and marked collectively as Stipulated Exhibit (3);
 c. Plaintiff's Personnel Records, which were admitted into the record and marked collectively as Stipulated Exhibit (4);
 d. A Floor-plan of Oaklawn Elementary School, which was admitted into the record and marked as Stipulated Exhibit (5);
 e. Correspondence to the Industrial Commission, which was admitted into the record and marked as Stipulated Exhibit (6);
 f. Plaintiff's Social Security Records, which were admitted into the record and marked collectively as Stipulated Exhibit (7).
 g. NEO Corporation Asbestos Abatement Records, which were admitted into the record and marked collectively as Stipulated Exhibit (8).
6. The issues to be determined by the Full Commission are as follows:
 a. Whether plaintiff was exposed to asbestos or asbestos containing products during her employment with defendant;
 b. Whether plaintiff developed asbestosis on 2 November 1998 and asbestos related pleural disease on 26 October 2001, and if so, to what amount of compensation is she entitled, if any;
c. To what medical treatment is plaintiff entitled, if any;
d. Whether plaintiff's claim was timely filed, and;
 e. Whether defendant is entitled to a credit for payments made to plaintiff under the State's disability income plan?
7. The depositions of Dr. Andrew Ghio, Dr. Charles D. Harr, and Dr. Douglas G. Kelling, Jr. are a part of the evidentiary record in this case.
 ***********
Based on the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the deputy commissioner hearing of this matter, plaintiff was sixty-two years old. Plaintiff completed the seventh grade and has no other specialized training or education.
2. Plaintiff's work history began in 1968. Prior to her employment with defendant, plaintiff performed domestic cleaning work and worked in textile mills as a sewer, clothes presser, and trimmer.
3. Plaintiff was first employed by defendant in 1974 on the custodial staff. At that time, plaintiff's position was classified as a "spare" worker, which required her to rotate between various schools, including Hidden Valley, Trion Hill, Windsor Park, and Oaklawn Elementary. Plaintiff left that position with defendant in 1980 and began working for the University of North Carolina at Charlotte performing custodial and cleaning type work. In 1982, plaintiff returned to a position with defendant as the head custodian at Oaklawn Elementary School and remained employed in that capacity until she retired in 1992.
4. Plaintiff's retirement was effective on August 6, 1992. Prior to that date, plaintiff had experienced difficulties with standing and walking long distances as the result of a chronic vascular disease, rheumatoid arthritis in both feet, and venous insufficiency. Subsequently, plaintiff received short-term disability benefits from defendant and later began receiving long-term disability benefits on October 5, 1993.
5. Plaintiff's claim alleges that she contracted the occupational disease of asbestosis and asbestos-related pleural disease due to exposure to asbestos while employed by defendant at Oaklawn Elementary School. Plaintiff's duties as a head custodian for defendant at that school primarily involved cleaning various areas of the school including but not limited to the multipurpose room, which also served as the school's cafeteria, and the boiler room. Plaintiff's duties also required her to replace light bulbs as needed and to secure the building at the end of each day. At the deputy commissioner hearing, an issue was raised regarding the extent or type of duties plaintiff was required to perform in the boiler room. According to plaintiff's testimony, which is accepted as credible by the Full Commission, her duties relating to that room included having to clean the boiler and having to release air from of its compressor.
6. At the deputy commissioner hearing, plaintiff testified that many of the ceiling tiles in the multipurpose/cafeteria room were in poor condition. As a result, when plaintiff cleaned that room each morning prior to the arrival of students, her cleaning duties often involved the cleaning of a white dusty material that had fallen from these roof tiles. Also, when plaintiff changed light bulbs, she testified that this same white dusty material would fall into her face.
7. As for the boiler room, plaintiff performed tasks in that room each morning. The pipes connected to the boilers were covered in insulation that would flake off and which plaintiff would have to clean. Additionally, when warranted, plaintiff cleaned dust from holes directly on the boilers. Plaintiff's testimony that the boiler room was "dusty" and had no ventilation is accepted as credible by the Full Commission.
8. In July 1991, defendant began abatement procedures at Oaklawn Elementary School. As part of this process, all removed materials were wetted and bagged immediately with negative air pressure containment. Also, during this period, areas such as the multipurpose/cafeteria room or boiler room were sealed with hanging sheets of plastic while undergoing the abatement process. Nonetheless, plaintiff continued to enter these areas during the abatement period to perform her custodial duties. Although workers involved in the abatement process were provided with protective clothing and masks at the beginning of the project, plaintiff was not provided with a paper mask and apron until sometime after abatement had commenced. When the abatement workers ended their day's work, plaintiff would enter the multipurpose/cafeteria room to sweep and clean. In the boiler room, when the abatement workers were removing and replacing the pipe insulation, plaintiff continued to enter the room each morning to perform her assigned duties.
9. Evidence from official public records indicate the presence of asbestos and asbestos containing products throughout the premises of Oaklawn Elementary School, including the multipurpose room/cafeteria, the boiler rooms, and office areas. Some of the asbestos found was characterized as friable and damaged.
10. Mr. Charles Hughart, an asbestos expert with some affiliation with defendant, testified at the hearing regarding Stipulated Exhibit (3), the Public Records-AHERA Management Plan, and the presence of asbestos in the school prior to abetment. Mr. Hughart testified that asbestos was present in insulation, crawl spaces and floor tiles, but not in the ceiling tiles. However, documents that are part of Stipulated Exhibit (3) confirm that the ceiling tiles in the multipurpose/cafeteria room were removed during the abatement project. The fact that Mr. Hughart testified that no tests were performed on the ceiling tiles and that the presence of asbestos was merely assumed does not diminish the relevance and probative value of the actual abatement work performed on the ceiling tiles at the Oaklawn school. The reasonable and fair inference based upon the totality of the evidence is that asbestos or asbestos containing materials were present in the school's ceiling tiles during the period of plaintiff's employment.
11. In this matter, defendant has asserted that plaintiff's underlying account of her history is not credible. As an example of its contention in this regard, defendant notes that plaintiff's account of the frequency of her cigarette smoking habit differed in histories given to various treating physicians. However, the Full Commission finds such inconsistencies as inconsequential and as not being indicative of an overall lack of credibility.
12. On November 2, 1998, Dr. Douglas Kelling diagnosed plaintiff as having asbestosis. Plaintiff then filed her claim for asbestosis in 1999. In 2001, plaintiff was again examined by Dr. Kelling, with said visit being designated as her panel exam as required by Commission procedures. In 2001, Dr. Kelling confirmed his diagnosis of asbestosis and also diagnosed plaintiff as having asbestos-related pleural disease.
13. Dr. Andrew Ghio has testified by deposition that there was no evidence plaintiff had fibrosis in her lungs, and that if she did, it was attributable to other medical conditions and unrelated to asbestos exposure. Dr. Ghio opined that plaintiff had insufficient exposure to asbestos to contract asbestosis. However, Dr. Ghio did not examine plaintiff, did not hear her testimony at the deputy commissioner hearing, and did not review the public records documenting asbestos and asbestos-containing products in plaintiff's work areas. Accordingly, Dr. Ghio's testimony and opinions are given less weight than those of Dr. Kelling.
14. Plaintiff was first medically examined for breathing problems in 1995 by Dr. Carmine Dalton. At that time, there was no evidence of asbestos related pleural plaquing or interstitial disease. What was noted was a small focus of scaring in the upper lobe of plaintiff's right lung. By 1998, the nodule in the right upper lobe of plaintiff's lungs had increased in size and was surgically removed by Dr. Charles D. Harr on December 21, 1999. Dr. Harr testified at his deposition that plaintiff's nodule could have been caused by cancer, an infection, or rheumatoid disease, but that postoperative testing eliminated all causes other than a rheumatoid disease. Additionally, a chest X-ray after the surgery showed thickening of the pleura that was related to the surgery.
15. Notwithstanding plaintiff's earlier lung problems, plaintiff's claims for asbestosis and pleural disease were filed within two years of having been informed by a competent medical professional of the possible work-related cause of these conditions.
16. Plaintiff has been diagnosed with asbestosis as a result of her employment with defendant by Dr. Kelling, whose testimony and opinions are given more weight than those of other physicians involved in this matter due to the type and extent of his treatment of plaintiff, and that he was the physician who performed the panel examination required by the Commission. Dr. Kelling has also opined that plaintiff's employment with defendant and exposure to asbestos caused or significantly contributed to her pleural disease and exposed her to an increased risk of developing this disease as compared to members of the public not so employed. Additionally, Dr. Kelling has assigned plaintiff a ten to twenty-five percent (10% to 25 %) impairment rating based upon AMA criteria.
17. Based upon the credible evidence of record, plaintiff was, up until her retirement from defendant in 1992, injuriously exposed to the hazards of asbestos in excess of thirty (30) working days, or parts thereof, within seven (7) consecutive months.
18. Plaintiff's employment with defendant, and her exposure to asbestos, caused or significantly contributed to her pleural disease and exposed her to an increased risk of developing this disease as compared to members of the public not so employed.
19. Plaintiff concedes in her contentions and the Full Commission finds that she has been incapable of earning any wages in any employment since 1992 as a result of conditions that are not related to her asbestosis, her pleural disease, or to her employment with defendant.
20. Although plaintiff has asbestosis, she is no longer employed in a position that causes harmful exposure to the hazards of asbestos.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Because plaintiff's claims for compensation due to asbestosis and pleural disease, were timely filed, she is not barred from pursuing said claims. N.C.G.S. § 97-58.
2. Plaintiff was, up until her retirement from defendant in 1992, injuriously exposed to the hazards of asbestos in excess of thirty (30) working days, or parts thereof, within seven (7) consecutive months. N.C.G.S. § 97-57.
3. As the result of her employment with defendant, and her exposure to asbestos, plaintiff has contracted the occupational disease asbestosis. N.C.G.S. § 97-53(24).
4. Plaintiff's employment with defendant, and her exposure to asbestos, caused or significantly contributed to her pleural disease. N.C.G.S. § 97-53(13). Additionally, plaintiff's employment with defendant exposed her to an increased risk of developing pleural disease as compared to members of the general public not so employed. Id.
5. Because any disability plaintiff may now have is not related to her compensable occupational diseases, she is not entitled to total or partial benefits pursuant to the provisions of N.C.G.S. § 97-29 or N.C.G.S. § 97-30.
6. To recover under the provisions of N.C.G.S. § 97-61.5(b), a claimant must be "removed" from their employment. Austin v. ContinentalGeneral Tire, 354 N.C. 344, 553 S.E.2d 680 (2001). Because plaintiff is no longer employed in a position that causes harmful exposure to the hazards of asbestos, she need not be "removed" from her employment. Id.
Accordingly, plaintiff is not entitled to 104 weeks of compensation. Id; N.C.G.S. § 97-61.5.
7. As the result of her compensable asbestosis, plaintiff is entitled to be paid by defendant $20,000.00, or $10,000.00 per lung pursuant to N.C.G.S. § 97-31(24).
8. As the result of her compensable asbestosis and pleural disease, plaintiff is entitled to have defendant pay for all related medical expenses incurred or to be incurred. N.C.G.S. §§ 97-25; 97-25.1.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission AFFIRMS the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay to plaintiff $20,000.00, or $10,000.00 per lung, for permanent injury to any important organ of the body. Having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein.
2. Defendant shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of her asbestosis and pleural disease.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. The compensation having accrued, this fee shall be deducted from the amounts due plaintiff, and paid directly to counsel for plaintiff.
4. Defendants shall pay the costs due the Commission for the initial hearing before the Deputy Commissioner and each side shall bear its own costs for hearing before the Full Commission.
This the ___ day of July 2003.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER